# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>BRIDGEVIEW AEROSOL, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-41021 |
| IN RE:<br><br>AERONUEVO, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-41029 |
| IN RE:<br><br>USAEROSOLS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-41038 |

## NOTICE OF MOTION

TO: See Attached Service List

PLEASE TAKE NOTICE that on November 2, 2009 at 3:30 a.m., the undersigned shall appear before the Honorable Pamela S. Hollis, in Courtroom 644, 219 South Dearborn Street, Chicago, Illinois, and then and there present the DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO (1) USE CASH COLLATERAL AND (2) PROVIDE ADEQUATE PROTECTION AND FOR RELATED RELIEF, at which time you may appear if you deem fit.

| | | |
|---|---|---|
| | Respectfully submitted, | |
| Dated: October 30 , 2009 | | |
| | Bridgeview Aerosol, L.L.C. | |
| | AeroNuevo, L.L.C.<br>USAerosols, L.L.C. | |
| | By: | */s/ Steven B. Towbin* |
| | | One of their attorneys |

Steven B. Towbin (Illinois Bar No. 2848546)
Mark L. Radtke (Illinois Bar No. 6275738)
Kimberly Bacher (Illinois Bar No. 6285677)
Shaw Gussis Fishman Glantz
Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151 telephone
(312) 980-3888 facsimile

## CERTIFICATE OF SERVICE

Steven B. Towbin certifies that he caused to be served a true copy of the above and foregoing NOTICE OF MOTION and DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO (1) USE CASH COLLATERAL AND (2) PROVIDE ADEQUATE PROTECTION AND FOR RELATED RELIEF upon the attached Service List via Electronic Mail Notice and via U.S. Federal Express Delivery in the manner so indicated on this 30th day of October, 2009.

*/s/ Steven B. Towbin*

## SERVICE LIST

**The following addresses were served for delivery by Federal Express and e-mail at the address provided for below:**

John Clark
Hancock & Estabrook, LLP
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202
rjclark@hancocklaw.com

James C. Joslin
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
james.joslin@kirkland.com

William T. Neary
United States Trustee
219 S. Dearborn Street, Suite 873
Chicago, Illinois 60604
USTPRegion11.ES.ECF@usdoj.gov

Linda Romano
501 Main Street
Utica, NY 13501
leromano@aol.com

Daniel O'Toole
23 Garden Street
New York Mills, NY 13417
dotoole@thefgi.com

Dennis Nolan
8470 South 77th Avenue
Bridgeview, IL 60455
dnolan@bvaerosol.com

Norm Newman
Much Shelist
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
kcarlson@muchshelist.com

**Secured Creditors**

**The following addresses were served for delivery by federal express at the address provided for below:**

Design Master Color Tool Inc.
358 Arapahoe Avenue
Boulder, CO 80302

Key Equipment Finance Inc.
Attn: UCC Dept.
3075 Highland Parkway
Downers Grove, IL 60515

Prestone Products Corp.
A Subsidiary of Honeywell Intl, Inc.
39 Old Ridgebury Road
Danbury, CT 06810

Wells Fargo Bank, NA
Attn: Kathryn Williams
230 West Monroe, Suite 200
Chicago, IL 60606

COOK COUNTY TREASURER
118 N. Clark St. #112
Chicago, IL 60602

**The following addresses were served for delivery by Federal Express or U.S. Express Mail at the address provided for below:**

**20 Largest Consolidated Creditors**

BALL CORPORATION
Attn: Casey Dodson
1717 Gifford Road
Elgin, IL 60120

BLACK FLAG / THE HOMAX
GROUP, INC.
Attn: Brian Halverson, Controller
200 Westerly Rd
Bellingham, WA 98226

CROWN CORK & SEAL COMPANY
Attn: Brad Dahlgren
One Crown Way
Philadelphia, PA 19154

DIVERSIFIED CPC
INTERNATIONAL
Attn: Paul Caponigri
24338 W Durkee Rd,
Santa Fe Ind Dis
Channahon, IL 60410-0490

EMCO CHEMICAL DISTRIBUTORS
Attn: Marty Locke
2100 Commonwealth Ave, PO Box 1030
N. Chicago, IL 60064

REED SMITH SACHNOFF &
WEAVER
Attn: James T. Hultquist
10 South Wacker Drive
Chicago, IL 60606

INTERSTATE CHEMICAL
COMPANY
Attn: Mike Quinn
7025 Reliable Parkway
Cleveland, OH 44193-1573

LASER TOOL, INC.
Attn: Chris Minnis
17763 State Hwy 198, PO Box 728
Saegertown, PA 16433

STONE CONTAINER
CORPORATION
Attn: Dave Zahller
2251 Berens Drive
New Lenox, IL 60451

ASHLAND DISTRIBUTION
COMPANY
Attn: John Kwasneski
8500 S. Willow Springs Rd
Willow Springs, IL 60480

HYDRITE CHEMICAL COMPANY
Attn: Tom Fredrich
300 N. Patrick Blvd.
Brookfield, WI 53045

BOND, SCHOENECK, & KING, PLLC
Attn: Richard Hole
One Lincoln Center
Syracuse, NY 13202

CL&D GRAPHICS
Attn: Ned Price
PO Box 644
Oconomowoc, WI 53066

PACKAGING DESIGN
Attn: Randy Haberman
101 Shore Drive
Burr Ridge, IL 60527

BERRY PLASTICS CORPORATION
Attn: Joe Franckowiak
PO Box 633485
Cincinnati, OH 45263

SUMMIT PKG. SYSTEMS INC.
Attn: Denis Couture
400 Gay Street
Manchester, NH 03103

BATAVIA CONTAINER, INC.
Attn: Clay Shaw
1400 Paramount Parkway
Batavia, IL 60510

PRECISION VALVE CORPORATION
Attn: Dave Hansen
700 Nepperhan Avenue
Yonkers, NY 10703

DS CONTAINERS
Attn: Emil Obradovich
1789 Hubbard Avenue
Batavia, IL 60510

PENNOCK COMPANY
3601 Island Avenue
Philadelphia, PA 19153
Attn: Robert Billings

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>BRIDGEVIEW AEROSOL, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-41021 |
| IN RE:<br><br>AERONUEVO, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-41029 |
| IN RE:<br><br>USAEROSOLS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-41038 |

**DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO (1) USE CASH COLLATERAL AND (2) PROVIDE ADEQUATE PROTECTION, AND FOR RELATED RELIEF**

Pursuant to 11 U.S.C. §§ 361, 362, 363(c)(2), 363(e), Fed. R. Bankr. P. 4001(b) and 4001(d), and Local Rule 4001-2, Bridgeview Aerosol, LLC ("BVA"), AeroNuevo, LLC ("AeroNuevo") and USAerosols, LLC ("USAerosols" and collectively, the "Debtors") hereby request that this Court enter an order in the form attached hereto ("Cash Collateral Order") authorizing the Debtors to (i) use cash collateral on an interim basis and after a final hearing ("Final Hearing") on an extended basis to the extent necessary to operate the Debtors' business as a going concern and thereby maintain and preserve the Debtors' assets, and (ii) provide adequate protection to the Debtors' secured creditor, Wells Fargo Bank, National Association

("WFB"), on account of its alleged prepetition liens and security interests, all of the foregoing in accordance with the Cash Collateral Order and the budget attached to the Cash Collateral Order as Exhibit A (as may be modified with WFB's consent, the "Budget"). In support of this motion, the Debtors state as follows:

## I. FED. R. BANKR. P. 4001(b)(1)(B) and L.R. 4001-2 DISCLOSURES

1. The following disclosures are made pursuant to Fed. R. Bankr. P. 4001(b)(1)(B):

    a. The only entity with an asserted interest in the subject cash collateral is WFB, though the Debtors have not yet determined whether the alleged claim and lien interests held by WFB are enforceable.

    b. The Debtors require the use of WFB's purported cash collateral in order to continue business operations and to maintain and preserve the going concern value of their assets pending reorganization. Accordingly, and pursuant to 11 U.S.C. § 363(c)(2), the Debtors request authority to use cash collateral in accordance with the provisions of the Cash Collateral Order and Budget to pay ongoing expenses incurred in the ordinary course of their business and ongoing expenses associated with the maintenance and preservation of the Debtors' assets. These expenses include, without limitation, payroll, employee related expenses, professional fees, maintenance costs, environmental safety and waste costs, utilities, lease expenses, taxes, and insurance.

    c. The Debtors' authority to use cash collateral is subject to compliance with the Budget, with a permitted variance of ten percent (10%) per expense line item without further order of this Court. The Budget may be modified with the prior written consent of WFB or by order of the Court. The Debtors anticipate that the current Budget, which extends for nine weeks, will be extended to at least 12 weeks by the time of the Final Hearing. The duration of the approved cash collateral use will consequently coincide with the term of the Budget as so extended.

    d. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Debtors request authority to provisionally grant certain adequate protection to WFB on account of its alleged prepetition liens and security interests by: (i) making provisional interest payments and paying real estate taxes as set forth in the Budget; (ii) granting WFB a postpetition lien on the Debtors' receivables and assets (but excluding chapter 5 avoidance actions) to the same extent and in the same priority as its prepetition liens therein, subject only to prior perfected and unavoidable liens in property of the Debtors' estate as of the Petition Date; and (iii) providing WFB with an allowed administrative

claim against the Debtors' estates under section 507(b) of the Bankruptcy Code, to the extent that the replacement liens and provisional interest payments do not adequately protect WFB from the diminution in the value of WFB's interests in its collateral. The Debtors also request authority to provide additional nonmonetary adequate protection to WFB including periodic reporting, rights to inspect the subject collateral, maintenance of and insurance for the collateral, and use of the collateral for lawful purposes, as more fully described herein.

2. The following disclosures of certain terms contained in the Cash Collateral Order are made pursuant to Local Bankruptcy Rule 4001-2(A)(2):

a. **Cross Collateralization Other Than As Adequate Protection:** No.

b. **Findings Regarding Validity, Perfection or Amount of Secured Creditor's Lien or Debt and Waiver of Claims Against Secured Creditor:** No.

c. **Waiver of Rights Under Section 506(c)***:* No.

d. **Liens on Chapter 5 Causes of Action:** No.

e. **Immediate Roll-Up of Prepetition Debt or Use of Postpetition Loans to Pay Prepetition Debt (Other Than Under § 552(b)):** No.

f. **Different Treatment of Professionals and Limit on Committee's Use of Carve-Out:** No.

g. **Priming of Secured Liens Without Consent:** No, the priority of prior liens is preserved to the extent that they are valid and enforceable.

h. **Declaration Against Imposition of Lender Liability:** No.

i. **Relief From The Automatic Stay on An Expedited Basis and/or Without Further Order of the Court:** No.

j. **Provisions for Joint and Several Liability on Loans:** No.

3. Pursuant to Local Rule 4001-2(A)(3), and to the extent not otherwise described herein, the following is a summary of other essential provisions of the Debtors' proposed use of cash collateral pursuant to the Cash Collateral Order:

**The Maximum Borrowing On An Interim And Final Basis**

a. This is not applicable to the Cash Collateral Order.

**The Interest Rate**

b. This is not applicable to the Cash Collateral Order.

**Maturity**

c. This is not applicable to the Cash Collateral Order.

**Events of Default**

d. This is not applicable to the Cash Collateral Order.

**Use of Funds Limitations**

e. Pursuant to paragraph 2 of the Cash Collateral Order, the Debtors are authorized to use cash collateral to fund expenses as set forth in the Budget. The Budget may be modified with the prior written consent of WFB or by further order of the Court and is subject to a permitted variance of ten percent (10%) per expense line item without further order of the Court.

**Borrowing Conditions**

f. The Debtors' use of cash collateral is conditioned upon the provision payment of interest and the conferral of liens and adequate protection pursuant to and as described in paragraph 3 of the Cash Collateral Order.

**The Budget**

g. The Budget is attached as Exhibit A to the proposed Cash Collateral Order. Pursuant to paragraph 2 of the Cash Collateral Order, the Budget may be modified with the prior written consent of WFB or by further order of the Court and is subject to a permitted variance of ten percent (10%) per expense line item without further order of the Court.

**§§ 363 and 364 Protections**

h. *See* ¶ 1(d) *supra.*

## II. FACTUAL BACKGROUND

### A. The Debtor's Chapter 11 Case

4. On October 30, 2009 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since then, the Debtors have remained in possession of their assets and have continued to operate their business as debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108. The Debtors have all of the rights and powers of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a).

5. This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

### B. The Debtors' Business

6. BVA is a New York limited liability company and operates at 8470 South 77th Street in Bridgeview, Illinois. AeroNuevo is also a New York limited liability company and has a place of business in Utica, New York. USAerosols is a New York limited liability company and has a place of business in Utica, New York. BVA is in the custom aerosol specialty products industry. BVA provides a wide array of services relating to aerosol products including initial product formulation, testing, manufacturing, packaging and distribution. BVA primarily manufactures, packages and distributes household cleaning and automotive products. AeroNuevo owns the real property on which BVA operates. USAerosols is the parent company of BVA and AeroNuevo.

7. The business was founded in 1946 and had generally experienced a steady increase in sales. By the mid-1980s, the company had roughly $20 million in annual revenue and, for the year ended December 31, 2008, BVA had revenue of more than $60 million. Over

the years and thus far in 2009, the business has been profitable. Through August 31, 2009, the Debtors had net income of nearly $200,000. BVA has approximately 150 employees.

C. **Events Leading To Chapter 11**

8. Notwithstanding the Debtors' historical success, BVA and one of its customers, Black Flag Brands, LLC ("Black Flag"), had a contract dispute that was referred to arbitration and heard on September 21, 2009 through September 25, 2009. When the dispute arose, Black Flag refused to pay the outstanding balance for shipments of product in the amount of $1,559,592.30 even though such product was unrelated to the dispute. After the underlying dispute was referred to arbitration, on April 27, 2009, the arbitration panel awarded BVA an "Interim Award" that granted BVA a recovery of $1,559,592.30 against Black Flag, together with interest at a rate of five percent per annum from August 10, 2008. On September 18, 2009, the United States District Court for the District of Minnesota confirmed the Interim Award and entered Judgment accordingly against Black Flag and in favor of BVA for "$1,559,592.30 together with interest at the rate of 5 percent per annum from August 10, 2008, due and owing immediately." Black Flag has not paid the Judgment.

9. Because of Black Flag's refusal to pay for the undisputed product, BVA was experiencing severe liquidity problems and could not obtain an over advance from its secured lender pending payment from Black Flag. BVA needed immediate access to cash in order to avoid a shutdown of its operations. On May 5, 2009, BVA accordingly sought and obtained the consent of its secured lender to settle for immediate cash payment of $700,000 a $3,542,978 subordinated note receivable (the "Subordinated Note") that was subject to the security interest of BVA's secured lender and that was owed to BVA by The Fountainhead Group, Inc. ("Fountainhead"), an affiliated non-debtor entity. The Subordinated Note was not due until

November 5, 2012 and was subordinate to Fountainhead's indebtedness to its secured lender, National City Business Credit, which separately approved Fountainhead's settlement of the Subordinated Note. BVA used the proceeds for working capital requirements in accordance with the Second Amendment, Consent and Waiver to Credit Security Agreement dated May 5, 2009. The cash payment alleviated BVA's liquidity problems at the time, but litigation of the Black Flag dispute and Black Flag's continued refusal to pay the Interim Award continued to disrupt BVA's normal business operations.

10. On October 5, 2009, the arbitration panel awarded Black Flag a "Partial Award" that granted Black Flag a recovery of more than $3.2 million relating to its breach of contract claims for disputed product. Black Flag has filed a motion in the United States District Court for the District of Minnesota requesting confirmation of the Partial Award.

11. BVA explored the possibility of a consensual resolution with Black Flag, even after the arbitration panel's Partial Award, but Black Flag and BVA could not reach a settlement that would be manageable for BVA. Moreover, BVA discussed the arbitration awards with its secured lender but was unable to obtain financing in amount that would enable BVA to satisfy the net amount of the partial award and to continue operation of its business. The Black Flag arbitration award and Black Flag's demands regarding collection of the Partial Award threatened the Debtors' existing financing and ability to operate as a going concern. The Debtors therefore commenced their chapter 11 cases in an effort to restructure their debt and to address the particular effects the Black Flag award will have on their business.

12. In addition to the unsecured claim of Black Flag relating to the Partial Award, as of the Petition Date, BVA has nearly 200 trade creditors with unsecured claims totaling more than $7.0 million.

13. In addition to obtaining the general benefits of the automatic stay under § 362(a) of the Bankruptcy Code, and in particular the benefits with respect to Black Flag, the Debtors believe that the chapter 11 process will provide them with the most efficient platform to preserve the value of their assets as a going concern and to restructure their balance sheet and operations for the benefit of all of their creditors or, in the alternative, to sell their assets as a going concern with the benefits of, among others, a competitive bidding process, the protections for buyers under § 363 of the Bankruptcy Code and relief relating to executory contracts under § 365 of the Bankruptcy Code.

14. The Office of the United States Trustee has not yet formed an official committee of unsecured creditors in these cases.

**D. The Debtors' Relationship With Wells Fargo Bank**

15. On March 20, 2008, the Debtors entered into a business credit and security agreement, as amended from time to time (the "Loan Agreement"), with WFB to permit loan advances and other financial accommodations to the Debtors including, but not limited to: (a) a $13,000,000 revolving line of credit for BVA's working capital requirements, letters of credit needs and the refinance of existing senior bank indebtedness; (b) a $1,545,000 term loan to enable BVA to refinance existing indebtedness relating to equipment; (c) a $4,125,000 term loan to enable AeroNuevo to refinance existing senior bank indebtedness relating to real estate; and (d) a $500,000 loan facility to finance BVA's purchase of new equipment. The Debtors pledged all or substantially all of their assets, including cash, as security under the Loan Agreement. As of the Petition Date, the Debtors balance under the Loan Agreement is approximately $12,000,000.

16. Moreover, as set forth in the Second Amended and Restated Limited Unconditional Guaranty dated as of September 30, 2009, Linda E. Romano and John F. Romano, the sole members of USAerosols, have guaranteed in aggregate the indebtedness under the Loan Agreement up to $590,972.50.

17. Subject to the terms of a proposed Cash Collateral Order and the Budget attached thereto, the Debtors seek authority to use of WFB's cash collateral. The Debtors intend to use the cash collateral to operate their business in the ordinary course and to facilitate the reorganization of their balance sheets and business. Subject to this Court's approval, the Debtors have retained professionals to assist it in achieving this goal. Those professionals include the Debtors' bankruptcy counsel, Shaw Gussis Fishman Glantz Wolfson & Towbin LLC.

## III. REQUESTED AUTHORITY TO USE CASH COLLATERAL

18. The Debtors seek on an emergency basis authority to use for an interim period proceeds from accounts receivable collections and other collateral pursuant to the Cash Collateral Order and to set this matter for a final hearing on the Debtors' request to use cash collateral.

19. WFB asserts that under the Loan Agreement and related documents its claims against the Debtors are secured by first priority, non-avoidable, perfected, valid and enforceable liens on and security interests in all or substantially all of the Debtors' assets ("Cash Collateral"). WFB accordingly asserts that it holds non-avoidable, perfected, valid and enforceable security interests in the Debtors' "cash collateral" as that term is defined within the meaning of 11 U.S.C. § 363(a). Notwithstanding the Debtors' request for authority to use Cash Collateral, nothing contained in the interim Cash Collateral Order shall be deemed to constitute a determination of the validity, priority, perfection, enforceability, or unavoidability of WFB's purported prepetition

liens or interests as the Debtors have not yet determined whether WFB's alleged claim and lien interests are enforceable.

20. The Debtors require use of the Cash Collateral in order to continue their business operations and to maintain and preserve the going concern value of their assets while they reorganize. Pursuant to 11 U.S.C. § 363(c)(2), the Debtors accordingly request authority to use Cash Collateral in accordance with the provisions of the Cash Collateral Order and Budget, subject to a permitted variance of ten percent (10%) per line item, in order to pay ongoing expenses incurred in the ordinary course of their business and ongoing expenses associated with the maintenance and preservation of the Debtors' assets.

21. Provided that the Debtors (i) comply with the provisions of the Cash Collateral Order and Budget, subject to permitted variances, and (ii) provide the adequate protection contemplated therein (and as discussed in greater detail below), this Court should authorize the Debtor's use of the Cash Collateral for expenditures in accordance with the Budget. The proposed use of Cash Collateral will adequately protect the security interests asserted by WFB pending a final hearing by preserving and maintaining the value of the Debtors' business operations and the Cash Collateral. *See In re Addison Properties Ltd. P'ship*, 185 B.R. 766, 783 (Bankr. N.D. Ill. 1995) (collecting cases regarding use of cash collateral and determination of adequate protection).

22. The Debtors believe that (i) the terms and provisions of the Cash Collateral Order are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtors could obtain the necessary use of Cash Collateral, and (ii) WFB is entitled to the protections afforded under §§ 361 and 363(e) as more specifically described in paragraph 3 of the Cash Collateral Order.

23. Without the ability to use Cash Collateral to pay for expenses associated with the Debtors' postpetition operations and the maintenance and preservation of their assets pending a final hearing, the going concern value of those assets will deteriorate. Therefore, the Debtors request interim authority to use Cash Collateral according to the Budget. Such interim use is necessary to avoid immediate and irreparable harm to the value of the Debtors' assets and their estates pending a final hearing. Moreover, at a final hearing, the Debtors will request that the duration of the approved cash collateral use coincide with the term of the Budget, which should then be extended to at least 12 weeks through the week beginning January 11, 2010.

## IV. ADEQUATE PROTECTION

24. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Debtors request authority to grant certain adequate protection to WFB on account of its asserted prepetition liens and security interests by provisionally paying interest to WFB and by granting WFB replacement liens and additional nonmonetary protections. Moreover, to the extent that such replacement liens and provisional interest payments do not adequately protect WFB from the diminution in the value of WFB's interests in the Cash Collateral (valued as of the Petition Date), WFB shall have an allowed administrative claim against the Debtors' estates under section 507(b) of the Bankruptcy Code.

25. As more specifically set forth in paragraph 3 of the Cash Collateral Order, the Debtors propose granting WFB replacement liens and security interests on all existing and hereafter acquired assets of the Debtors (excluding chapter 5 causes of action) to the same priority, validity and extent that WFB's interest in the Cash Collateral existed as of the Petition Date, which adequate protection liens will be subject to any other valid, enforceable and unavoidable existing liens on the Debtors' assets.

26. The Debtors also propose additional nonmonetary adequate protection to WFB as follows:

a. In addition to continuing to provide WFB with all reports the Debtors provided to WFB in the ordinary course of business prior to the Petition Date, providing weekly reports in a format similar to the Budget that compares the budget with actual results and timely filing the Debtors' monthly operating reports required by the Office of the United States Trustee;

b. Providing reasonable access to the Debtors' (i) premises for the purpose of inspecting WFB's collateral and (ii) books and records;

c. Maintaining and keeping WFB's collateral in good condition, repair and working order (normal wear and tear excepted), unless such collateral is not necessary for the Debtors' business operations and reorganization efforts as determined in the Debtors' business judgment;

d. Maintaining insurance existing as of the Petition Date with respect to the business and collateral; and

e. Using the collateral for lawful purposes, without violation of any federal, state or local law, statute or ordinance.

27. Moreover, the Debtors propose to make provisional interest payments to WFB on a monthly basis, with the first of such payments to be made during the week beginning November 2, 2009 as set forth in the Budget. The Debtors' propose paying interest on a provisional basis to WFB in the amount of $31,000 per month for their use of WFB's cash collateral, plus monthly interest payments in the amount of $10,287 as adequate protection for the Debtors' use of the property in Bridgeview, Illinois that AeroNuevo owns. The Debtors have also budgeted for the payment of insurance and real estate taxes.

28. The Debtors' proposed use of Cash Collateral in accordance with the Budget is, in the Debtors' judgment, sufficient for the Debtors to satisfy its cash needs in order to maintain and preserve the value of their assets while they reorganize. The Debtors propose that, unless the

Court otherwise orders, the Court's authorization for the Debtors to use Cash Collateral will terminate on the date that an order is entered concluding the final hearing on this Motion.

## V. NOTICE

29. The Debtors have served this Motion and notice of the preliminary hearing on this Motion by overnight delivery on the Office of the United States Trustee, counsel for WFB, and the Debtors' consolidated list of the twenty largest unsecured creditors.

## VI. EMERGENCY DESIGNATION

30. As a result of the Debtors' immediate and ongoing need for funding to operate its business, any delay in hearing this Motion will cause serious and irreparable harm to the Debtors and the going concern value of its assets. Therefore, the Debtors' request for an emergency hearing with respect to the interim relief in this Motion is necessary and appropriate under the circumstances.

## VII. CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 361, 362, 363(c)(2), 363(e), Fed. R. Bankr. P. 4001(b) and 4001(d), and Local Rule 4001-2, the Debtors request the entry of interim and final orders approving this Motion, and specifically: (i) authorizing the Debtors to use WFB's cash collateral on an interim basis in accordance with the terms of the Cash Collateral Order pending a final hearing on this Motion; (ii) authorizing the Debtors to use WFB's cash collateral on a final basis on substantially the same terms as the Cash Collateral Order; (iii) scheduling a final hearing on this Motion no sooner than 28 days after the entry of the interim order on this Motion or on such later date as the court's calendar permits; (iv) authorizing the Debtors to provide adequate protection in favor of WFB in the manner and to the extent described herein; and (v)

granting such other and further relief as is just and to which the Debtors may be entitled under the circumstances.

Respectfully submitted,

Bridgeview Aerosol, LLC,
AeroNuevo, LLC and
USAerosols, LLC

Dated: October 30, 2009

By: /s/ Steven B. Towbin
One of their attorneys

Steven B. Towbin
Mark L. Radtke
Shaw Gussis Fishman Glantz
Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151 telephone
(312) 980-3888 facsimile
stowbin@shawgussis.com
mradtke@shawgussis.com

## CERTIFICATION CONCERNING EMERGENCY HEARING

I hereby certify, as a member of the Bar of this Court, that I have carefully examined this matter and that there is a true necessity for an emergency matter. I certify further that the necessity for this emergency hearing has not been caused by any lack of due diligence or intentional action or failure to act on my part or by my client, but has been brought about only by the circumstances of this case.

The reason this must be heard as an emergency matter is that, as a result of the Debtors' immediate and ongoing need for funding to operate their business, any delay in hearing this Motion will cause serious and irreparable harm to the Debtors and the going concern value of their assets. Therefore, the Debtors' request for an emergency hearing with respect to the interim relief in this Motion is necessary and appropriate under the circumstances.

Respectfully submitted,

Bridgeview Aerosol, LLC,
AeroNuevo, LLC and
USAerosols, LLC

Dated: October 30, 2009

By: /s/ Steven B. Towbin
One of their attorneys

Steven B. Towbin
Mark L. Radtke
Shaw Gussis Fishman Glantz
Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151 telephone
(312) 980-3888 facsimile
mradtke@shawgussis.com