UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRIDGEVIEW AEROSOL, LLC, *et al.*, | ) | Case No. 09-41021 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Pamela S. Hollis |

THIRD INTERIM ORDER AUTHORIZING USE OF
CASH COLLATERAL AND GRANTING
ADEQUATE PROTECTION

Upon further interim consideration of the amended motion (the "Amended Motion") of Bridgeview Aerosol, LLC ("BVA"), AeroNuevo, LLC ("AeroNuevo") and USAerosols, LLC ("USAerosols" and collectively, the "Debtors") requesting this Court's authorization to use the cash collateral of Wells Fargo Bank, National Association ("WFB") pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; due and proper notice of the Amended Motion and the proposed Third Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection (the "Proposed Order") having been given to all parties entitled thereto; an interim hearing having been held on the Proposed Order and the Amended Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(c)(2); the Court having heard the statements of counsel for the Debtors and WFB at the interim hearing; the Court having considered all relevant matters related thereto and being otherwise fully advised in the premises; and it appearing to the Court as follows based on the representations in the Amended Motion and at the interim hearings on the Amended Motion:

A.    On October 30, 2009 (the "Petition Date"), each of the Debtors filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors retain possession of their property and continue to operate their businesses as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

{7270 ORD A0248506.DOC 2}

B. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

C. Prior to the Petition Date, the Debtors entered into, *inter alia*, that certain Credit and Security Agreement dated March 20, 2008 (as amended by the First Amendment to Credit and Security Agreement dated November 25, 2008, the Second Amendment, Consent and Waiver to Credit and Security Agreement dated May 5, 2009, the Third Amendment to Credit and Security Agreement dated as of July 1, 2009, and the Fourth Amendment to Credit and Security Agreement and Waiver dated September 30, 2009 (collectively, the "Credit Agreement"), with WFB to permit loan advances and other financial accommodations to the Debtors including, but not limited to: (a) a $13,000,000 revolving line of credit for BVA's working capital requirements, letters of credit needs and the refinance of existing senior bank indebtedness; (b) a $1,545,000 term loan to enable BVA to refinance existing indebtedness relating to equipment; (c) a $4,125,000 term loan to enable AeroNuevo to refinance existing senior bank indebtedness relating to real estate; and (d) a $500,000 loan facility to finance BVA's purchase of new equipment. As consideration for entering into the Fourth Amendment to Credit and Security Agreement and Waiver, Linda E. Romano and John F. Romano, the sole members of USAerosols, have guaranteed, in aggregate, the indebtedness under the Credit Agreement up to $590,972.50 pursuant to the terms of the Second Amended and Restated Limited Unconditional Guaranty dated as of September 30, 2009. As of the Petition Date, the balance under the Credit Agreement is $13,215,691.67.

D. Contemporaneously with the execution of the Credit Agreement, the Debtors and WFB entered into that certain Master Agreement for Treasury Management Services and Blocked Account Control Agreement ("Lockbox and Lockbox Account – Automatic Sweep/Frozen") (the "Lockbox Agreement") directing deposit of all of WFB's Cash Collateral into an account in the name of WFB pursuant to the terms of the Lockbox Agreement.

E. Cash in the Debtors' accounts at WFB as of the Petition Date, representing proceeds of collections of accounts receivable of the Debtors, along with the existing accounts receivable of the Debtors as of the Petition Date, represent cash collateral which WFB claims is subject to WFB's liens and security interest (the "Cash Collateral").

F. On November 2, 2009, this Court entered the Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection [Docket No. 15] (the "First Interim Order").

G. On November 20, 2009, this Court entered the Second Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection [Docket No. 58] (the "Second Interim Order").

H. Subject to the terms and conditions set forth in this Third Interim Order, WFB is willing to consent to Debtors' use of Cash Collateral to continue their business operations and to maintain and preserve the going concern value of their assets while they reorganize. WFB consents to the use of the Cash Collateral in accordance with the provisions of this Third Interim Order in order to pay ongoing expenses incurred in the ordinary course of their business and ongoing expenses associated with the maintenance and preservation of the Debtors' assets.

I. This Third Interim Order is entered pursuant to, and shall be construed and be consistent with § 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) to prevent immediate and irreparable harm to the Debtors' estates.

J. The notice provided by the Debtors of the Amended Motion, the hearings on the Amended Motion, and the entry of this Third Interim Order satisfy the requirements of Bankruptcy Rule 4001(b) and were otherwise sufficient and appropriate under the circumstances.

IT IS HEREBY ORDERED:

1. The Amended Motion is hereby granted on a further interim basis than set forth in the Second Interim Order, and the Debtors are entitled to use cash collateral pursuant to § 363(c) of the Bankruptcy Code subject to the terms and conditions set forth in this Third Interim Order.

2. The Debtors are authorized, solely and in accordance with the terms of this Third Interim Order, to use the Cash Collateral on an interim basis until the next interim hearing on the Amended Motion, in a manner that is substantially consistent with the budget attached hereto as Exhibit A ("Budget"), to pay actual, ordinary, and necessary expenses of the Debtors' business, which Budget shall be cumulative through the next Interim Hearing Date (as defined hereafter) in order to allow for timing differences for any expense line item, and which Budget shall be subject to a permitted variance of ten percent (10%) per expense line item without further order of this Court; provided, however, to the extent the Debtors have excess cash collections during any given week, the Debtors may exceed the permitted variance of ten percent (10%) and use such excess cash for "Raw Materials Purchases" subject to a permitted variance of twenty-two percent (22%) and "Factory Labor" subject to a permitted variance of eighteen percent (18%) in order to expeditiously fulfill any pending customer orders without further order of this Court or the consent of WFB. Subject to WFB's consent, which consent shall not be unreasonably withheld, the Debtors may exceed the permitted variances for "Raw Materials Purchases" (22%) and "Factory Labor" (18%) up to 35% for "Raw Material Purchases" and up to 25% for "Factory Labor," without further order of this Court. For the avoidance of doubt, if the Debtors have provided WFB with bona fide and profitable purchase orders (including the allocable amount of Raw Materials Purchases and Factory Labor) that require the expenditure of Cash Collateral up to the maximum permitted variances for "Raw Materials Purchases" and "Factory Labor" WFB shall not withhold its consent to the use of the Cash Collateral. The Budget may also be modified with the prior written consent of WFB, with prompt notice to the Creditors' Committee, or by further order of this Court after notice and opportunity for hearing.

3. As adequate protection for the Debtors' use of the property in Bridgeview, Illinois that AeroNuevo owns, BVA shall make monthly payments to AeroNuevo as set forth in the Budget under the "Real estate taxes and rent" expense line item, which payments will be held in

a segregated account and used to (i) maintain and preserve the real property (including payment of insurance for such property); (ii) make provisional payments, subject to 11 U.S.C. § 506(b), of $13,901 per month as adequate protection for the Debtors' use of the property in Bridgeview, Illinois that AeroNuevo owns; and (iii) pay property taxes. The Debtors will also make provisional payments, subject to 11 U.S.C. § 506(b), of $36,251 per month to WFB as adequate protection for their use of the Cash Collateral. The aggregate amount of the adequate protection payments to be made to WFB on a monthly basis, therefore, is $50,152. In addition to the provisional payments that the Debtors will make to WFB pursuant to the Budget as adequate protection for any use or diminution in the value of WFB's interest in the Debtors' prepetition assets ("Prepetition Collateral"), including the Cash Collateral, WFB is hereby granted as additional adequate protection:

(a) Retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected liens of the highest available priority upon (i) any property that the Debtors acquire after the Petition Date including, without limitation, any accounts receivable generated by the Debtors' postpetition operations, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code, and (ii) any proceeds generated from such property.

(b) In addition to continuing to provide WFB with all reports the Debtors provided to WFB in the ordinary course of business prior to the Petition Date, the Debtors shall provide: (i) weekly reports to WFB and counsel for the Creditors' Committee in a format similar to the Budget that compares the budget with actual results and shall timely file their monthly operating reports; (ii) a weekly report to WFB indicating the amount of in-transit or pre-paid inventory; and (iii) a weekly report to WFB of all raw materials inventory purchased by a third party on behalf of or for use by the Debtors.

(c) WFB shall have reasonable access to the Debtors' (i) premises for the purpose of inspecting WFB's collateral and (ii) books and records.

(d) The Debtors shall maintain and keep WFB's collateral in good condition, repair and working order (normal wear and tear excepted), unless such collateral is not necessary for the Debtors' business operations and reorganization efforts, as determined in the Debtors' business judgment.

(e)   The Debtors shall maintain all insurance that existed as of the Petition Date with respect to the Debtors' business and WFB's collateral.

(f)   The Debtors shall only use the collateral for lawful purposes, without violation of any federal, state or local law, statute or ordinance.

The liens granted in this paragraph ("Adequate Protection Liens") shall be subject only to prior perfected and unavoidable liens in property of the Debtors' estate as of the Petition Date. Moreover, to the extent that the Adequate Protection Liens and provisional payments do not adequately protect WFB from the diminution in the value of WFB's interests in the Prepetition Collateral, if any, WFB shall have an allowed claim in accordance with 11 U.S.C. § 507(b) against the Debtors' estates that shall be superior to any unsecured claim, whether an administrative or priority claim, against the Debtors' estates except quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

4.   Provided WFB acts in accordance with its practices prior to the Petition Date including, but not limited to, the timing for availability of deposits, the Lockbox Agreement shall continue in full force and effect through the Interim Hearing Date.

5.   Without prejudice to the right of any creditor or other party in interest, including the Creditors' Committee, to object to, challenge, seek to avoid or otherwise dispute the amount, extent, validity and priority of WFB's prepetition claims, liens, and security interests, the Debtors are deemed to stipulate with WFB that WFB's prepetition security interests and liens are properly perfected, valid and unavoidable and secure WFB's prepetition claim in the amount of $13,215,691.67. Nothing in this paragraph, however, shall preclude the Debtors from challenging, objecting to, disputing or otherwise seeking to have judicially determined the value of WFB's collateral at any time during these chapter 11 cases and for any purpose in or in connection with these chapter 11 cases or any adversary proceedings arising in or related to these chapter 11 cases, including any hearing under 11 U.S.C. § 506 or § 1129 and further, nothing herein shall prevent WFB from asserting that it is an oversecured creditor and entitled to the

rights and claims of such an oversecured creditor. Further, the Committee shall have sixty (60) days from the date of the Second Interim Order to object to WFB's liens. If no challenge is presented to WFB's liens by the conclusion of such sixty (60) day period, or any extension of such sixty (60) day period, whether by agreement or order of Court, WFB's liens shall be deemed to be valid and properly perfected.

6. This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Adequate Protection Liens, whether or not WFB elects to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and WFB may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtors have real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of its liens and security interests.

7. The entry of this Interim Order is without prejudice to the Debtors' right to seek authority to use additional cash collateral or borrow funds pursuant to 11 U.S.C. § 364 if the Debtors determine that the cash collateral use authorized by this Interim Order is insufficient. Nothing contained in this Interim Order, however, shall constitute WFB's consent to be primed by any subsequent lender.

8. The Amended Motion is hereby set for a further interim hearing before this Court at **10:30 a.m. on January 26, 2010** (the "Interim Hearing Date"), at which time any party in interest may present any timely filed objections to the entry of the proposed fourth interim order (the "Fourth Interim Order"). On or before January 19, 2010, the Debtors shall serve the proposed Fourth Interim Order, by e-mail, facsimile or overnight delivery upon (i) the Office of the United States Trustee; (ii) counsel for WFB; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) any known holders of prepetition liens against the Debtors' property;

and (v) any other party which has filed a request with this Court for notice in the Debtors' cases and served such request upon the Debtors' counsel. Objections to the entry of a Fourth Interim Order on the Amended Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of Illinois no later than **January 22, 2010** which objections shall be served so that the same are received on or before 4:00 p.m. (Central time) of such date by (i) Steven B. Towbin and Mark L. Radtke, Shaw Gussis Fishman Glantz Wolfson & Towbin LLC, counsel to the Debtors, 321 N. Clark Street, Suite 800, Chicago, Illinois 60654; (ii) Norman B. Newman, Much Shelist Denenberg Ament & Rubenstein, P.C., counsel to WFB, 191 N. Wacker Dr., Suite 1800, Chicago, Illinois 60606; (iii) Henry B. Merens, Adelman & Gettleman, Ltd., proposed counsel for the creditors' committee, 53 W. Jackson Blvd., Suite 1050, Chicago, Illinois 60604; and (iv) the Office of the United States Trustee.

9. The Debtors' authority to use Cash Collateral under this Third Interim Order shall be effective immediately and shall extend through the Interim Hearing Date, unless subsequently extended by written agreement of the Debtors and WFB or by further order of this Court. Nothing herein shall be deemed to constitute agreement by WFB to allow the Debtors' use of Cash Collateral after the Interim Hearing Date or shall prevent WFB from seeking relief from this Court in the event that WFB becomes insecure or has its collateral position eroded with regard to the Debtors' use of Cash Collateral.

Dated: **DEC 17 2009**

ENTER:

_____
Pamela S. Hollis
United States Bankruptcy Judge

{7270 ORD A0248506.DOC 2}    8

***Prepared By***:

Steven B. Towbin (#2848546)
Mark L. Radtke (#6275738)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151  telephone
(312) 980-3888  facsimile

*Counsel for Debtors*

Bridgeview Aerosol, LLC
Cash Collateral Budget

EXHIBIT A

| | 12/7/2009 | 12/14/2009 | 12/21/2009 | 12/28/2009 | 1/4/2010 | 1/11/2010 | 1/18/2010 | 1/25/2010 |
|---|---|---|---|---|---|---|---|---|
| | | | Week Beginning | | | | | |
| Gross Accounts Receivables | 6,496,006 | 6,721,839 | 6,520,129 | 6,220,435 | 5,823,739 | 5,751,739 | 6,301,739 | 6,301,739 |
| Plus Gross Sales | 1,200,000 | 1,400,000 | 550,000 | 550,000 | 828,000 | 1,400,000 | 1,000,000 | 1,100,000 |
| Plus Non A/R Cash | | | | | | | | |
| Less Collections | (974,715) | (1,600,000) | (850,000) | (950,000) | (900,000) | (850,000) | (1,000,000) | (1,000,000) |
| Total Ending A/R Balance | 6,721,839 | 6,520,129 | 6,220,435 | 5,823,739 | 5,751,739 | 6,301,739 | 6,301,739 | 6,401,739 |
| Inventory | 6,533,372 | 7,053,372 | 7,268,372 | 7,483,372 | 7,903,772 | 7,548,772 | 7,573,772 | 7,603,772 |
| Cash Balance | 168,661 | 505,813 | 240,688 | 246,594 | 427,919 | 42,914 | 6,464 | 15,020 |
| A/R Collections | 974,715 | 1,600,000 | 850,000 | 950,000 | 900,000 | 850,000 | 1,000,000 | 1,000,000 |
| Available Cash | 1,143,377 | 2,105,813 | 1,090,688 | 1,196,594 | 1,327,919 | 892,914 | 1,006,464 | 1,015,020 |
| Cash Needs | 637,564 | 1,865,125 | 844,094 | 768,675 | 1,285,005 | 886,450 | 991,444 | 1,001,950 |
| Ending Cash Balance | 505,813 | 240,688 | 246,594 | 427,919 | 42,914 | 6,464 | 15,020 | 13,070 |
| Total Raw Materials Purchases | 430,000 | 1,500,000 | 600,000 | 600,000 | 1,000,000 | 625,000 | 725,000 | 800,000 |
| Factory Labor | 80,500 | 111,500 | 80,500 | 111,500 | 86,000 | 111,500 | 111,500 | 111,500 |
| Overhead: | | | | | | | | |
| Insurance | | | | | | | | |
|   Group | 74,200 | 0 | 0 | 0 | 74,200 | 0 | 0 | 0 |
|   General | 0 | 7,500 | 40,844 | 0 | 0 | 7,500 | 40,844 | 0 |
|   Claims | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Utilities | 0 | 47,000 | 0 | 0 | 0 | 50,000 | 0 | 0 |
| Repairs and Maintenance | 3,750 | 3,750 | 3,750 | 0 | 3,750 | 3,750 | 3,750 | 3,750 |
| Payroll taxes | 8,250 | 8,250 | 8,250 | 0 | 8,250 | 8,250 | 8,250 | 8,250 |
| Real estate taxes and rent | 0 | 115,296 | 0 | 0 | 46,401 | 0 | 0 | 0 |
| Rental | 0 | | | | | | | |
| Safety and waste disposal | 0 | 3,500 | 12,000 | 0 | 0 | 0 | 3,500 | 12,000 |
| Sundry & Lab Supplies | 1,875 | 1,875 | 1,875 | 0 | 1,875 | 1,875 | 1,875 | 1,875 |
| **Sales Department** | | | | | | | | |
| Salaries- Sales Dept | | | | | | | | |
|   Lab | 0 | 10,250 | 0 | 10,250 | 0 | 10,250 | 10,250 | 10,250 |
| Automotive | 0 | 11,250 | 0 | 11,250 | 0 | 11,250 | 11,250 | 11,250 |
| Travel and entertainment | 0 | 0 | 500 | 550 | 550 | 0 | 550 | 0 |
| Freight-out | 5,000 | 0 | 2,500 | 0 | 2,500 | 0 | 0 | 0 |
| Insurance | 1,875 | 1,875 | 1,875 | 0 | 1,875 | 1,875 | 1,875 | 1,875 |
|   Group | | | | | | | | |
|   General | 5,142 | 0 | 0 | 0 | 5,142 | 0 | 0 | 0 |
| Payroll taxes | 13,000 | 0 | 0 | 0 | 0 | 13,000 | 0 | 0 |
| Sundry | 0 | 1,200 | 0 | 1,200 | 0 | 2,500 | 0 | 1,500 |
|     | 3,100 | | | | | | | |
| **General And Administrative** | | | | | | | | |
| Salaries | 0 | 29,000 | 0 | 29,000 | 0 | 29,000 | 0 | 29,000 |
| Insurance | | | | | | | | |
|   Group | 4,022 | 0 | 0 | 0 | 4,022 | 0 | 0 | 0 |
|   General | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Outside warehousing | 0 | 0 | 0 | 0 | 4,497 | 0 | 0 | 0 |
| Outside Payroll Services | 1,200 | 750 | 750 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Employee benefit plan contribution | 125 | 125 | 125 | 125 | 2,600 | 2,600 | 2,600 | 2,600 |
| Office supplies and Postage | 125 | 125 | 125 | 0 | 500 | 500 | 500 | 500 |
| Professional services | 500 | 500 | 80,000 | 500 | 500 | 500 | 82,500 | 500 |
| Payroll taxes | 0 | 979 | 0 | 600 | 0 | 1,500 | 0 | 1,500 |
| Telephone | 0 | 5,500 | 0 | 0 | 0 | 0 | 2,600 | 0 |
| Sundry and Employee Welfare | 2,400 | 2,400 | 8,500 | 0 | 2,400 | 2,400 | 2,400 | 2,400 |
| **Other** | | | | | | | | |
| Interest Expense | 0 | 0 | 0 | 0 | 36,243 | 0 | 0 | 0 |
| Miscellaneous Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Total Cash needs for week | 637,564 | 1,865,125 | 844,094 | 768,675 | 1,285,005 | 886,450 | 991,444 | 1,001,950 |
| Net available minus cash needs surplus/(deficit) | 505,813 | 240,688 | 246,594 | 427,919 | 42,914 | 6,464 | 15,020 | 13,070 |
| Collateral Position | 13,761,024 | 13,814,188 | 13,735,401 | 13,735,030 | 13,698,425 | 13,856,975 | 13,890,531 | 14,018,581 |