IN UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE<br><br>**BRIDGEVIEW AEROSOL, LLC,** *et al.,*<br><br>Debtors. | Chapter 11<br><br>Hon. Pamela S. Hollis<br><br>No. 09-41021 |
| **BRIDGEVIEW AEROSOL, LLC,**<br><br>Plaintiff,<br><br>-vs-<br><br>**PENGUIN BRANDS INC.,**<br><br>Defendant. | Adversary No. _____ |

## COMPLAINT

Plaintiff, Bridgeview Aerosol, LLC (the "Plaintiff" or "Debtor"), states as follows for its complaint against defendant Penguin Brands Inc. ("Penguin"):

## INTRODUCTION

1.  The Debtor has commenced this action to recover one hundred fifty thousand dollars ($150,000.00) from Penguin for goods sold and delivered pursuant to a series of purchase orders and invoices (the "Receivable").

2.  From August 31, 2009 through November 11, 2009, the Debtor manufactured and delivered cans of various products (collectively, the "Product") to Penguin. Penguin agreed to pay the Debtor $167,156.70 for the Product.

3.  As of the date of the filing of this action, Penguin has only paid the Debtor $17,156.70 for the Product.

4. Pursuant to a letter dated January 4, 2010 (the "Letter"), Penguin advised the Debtor that it was withholding $150,000 until it sold excess inventories and to cover the cost of potential fines. A copy of the Letter is attached hereto as Exhibit A.

## PARTIES

5. On October 30, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The filing of the Debtor's chapter 11 petition commenced a bankruptcy case pending before this Court and styled as *In re Bridgeview Aerosol, LLC, et al.*, Case No. 09-41021 (the "Case").

6. The Debtor has continued to manage its estate as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108. The Debtor has all of the rights and powers of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a), including the right to bring litigation on behalf of its estate pursuant to 11 U.S.C. §§ 323(a) and 323(b).

7. The Debtor is in the custom aerosol specialty products industry. BVA provides a wide array of services relating to aerosol products including initial product formulation, testing, manufacturing, packaging and distribution. The Debtor primarily manufactures, packages and distributes household cleaning and automotive products.

8. Penguin is a corporation with its principal place of business in Sharon Hill, Pennsylvania, and a former customer of the Debtor.

## JURISDICTION AND VENUE

9. The claims asserted in this action either arise under the Bankruptcy Code or arise in or are related to the Case. Accordingly, this Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 157(a), 157 (b), 1334(b) and 1334(e) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

10. Count I of this action is a non-core proceeding within the meaning of subsection 28 U.S.C. § 157(c)(1). The Debtor hereby consents, pursuant to 28 U.S.C. § 157(c)(2), to this Court entering a final order or judgment on Count I.

11. Count II of this action is a core proceeding within the meaning of one or more subsections of 28 U.S.C. § 157(b)(2), including (B), (E) and (O).

12. Count III of this action is a core proceeding within the meaning of one or more subsections of 28 U.S.C. § 157(b)(2).

13. In the event that any of the claims made in this action is deemed to be a non-core proceeding, the Debtor hereby consents, pursuant to 28 U.S.C. § 157(c)(2), to this Court entering a final order or judgment on such claims.

14. Venue of this action is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

## FACTUAL ALLEGATIONS

15. On or about September 13, 1993, the Debtor provided Penguin with a formula setting forth certain specifications and ingredients (the "Formula") for the manufacturing of the Products.

16. Pursuant to certain purchase orders, Penguin ordered Products from the Debtor (collectively, the "August Purchase Order"). A copy of the August Purchase Order is attached hereto as Exhibit B.

17. Upon completion of the August Purchase Order, the Debtor shipped the Products to Penguin in compliance with the Formula. The Debtor issued Penguin an invoice for the Products in the amount of $46,450.93 (the "August Invoice"). A copy of the August Invoice is attached hereto as Exhibit C.

18. Pursuant to certain purchase orders, Penguin ordered Products from the Debtor (collectively, the "September Purchase Order"). A copy of the September Purchase Order is attached hereto as Exhibit D.

19. Upon completion of the September Purchase Order, the Debtor shipped the Products to Penguin in compliance with the Formula. The Debtor issued Penguin an invoice for the Products in the amount of $48,510.10 (the "September Invoice"). A copy of the September Invoice is attached hereto as Exhibit E.

20. Pursuant to certain purchase orders, Penguin ordered Products from the Debtor (collectively, the "October Purchase Order"). A copy of the October Purchase Order is attached hereto as Exhibit F.

21. Upon completion of the October Purchase Order, the Debtor shipped the Products to Penguin in compliance with Formula. The Debtor issued Penguin an invoice for the Products in the amount of $32,115.60 (the "October Invoice"). A copy of the October Invoice is attached hereto as Exhibit G.

22. Pursuant to a certain purchase order, Penguin ordered Products from the Debtor (the "November Purchase Order"). A copy of the November Purchase Order attached is hereto as Exhibit H.

23. Upon completion of the November Purchase Order, the Debtor shipped the Products to Penguin in compliance with the Formula. The Debtor issued Penguin invoices for the Products in the amount of $31,935.60 and $8,144.64 (collectively, the "November Invoices" and together with the August Invoice, the September Invoice and the October Invoice, the "Invoices"). A copy of the November Invoices is attached hereto as Exhibit I.

24. The reverse side of each of the Invoices provides certain conditions of sale (the "Conditions of Sale"). Pursuant to Paragraph 5 of the Conditions of Sale, "[Debtor] warrant[s] that the product sold hereunder is in conformity with its current specifications therefore."

25. On January 4, 2010, Penguin sent the Letter to the Debtor. Pursuant to the Letter, Penguin alleges that the Debtor shipped Penguin cans of suede/nubuck that did not comply with certain volatile organic compound regulations (the "VOC Regulations"). The Letter provides in relevant part:

> We feel it is prudent for us at this time to withhold $50,000 for our excess inventories that we should liquidate by August and then pay you. We also feel it is prudent to withhold $100,000 to cover the cost of potential fines. Enclosed is a check for $17,156.70.

26. On September 13, 2006, the Debtor sent Penguin a letter advising Penguin that effective December 31, 2006, all footwear or leather care products sold in California and manufactured after that date must comply with certain VOC Regulations (the "2006 Letter"). A copy of the 2006 Letter is attached hereto as Exhibit J.

27. Pursuant to the 2006 Letter, the Debtor provided Penguin with two samples of cleaner that was formulated to comply with certain VOC Regulations.

28. Pursuant to an email sent from Penguin to the Debtor on August 23, 2007, Penguin advised the Debtor to proceed with the old formula, which did not comply with the VOC Regulations addressed in the 2006 Letter. A copy of the email is attached hereto as Exhibit K.

29. The Debtor had no duty to provide Penguin with any advice or information regarding the Product's compliance with VOC Regulations. The Debtor created the Product based on the Formula agreed to by Penguin.

30. As of the date of this action, Penguin has not produced any evidence that it incurred any fines for the Product.

31. As of the date of this action, Penguin has not made any allegations that it has been fined for sale of the Product.

32. The Debtor has timely performed all of its obligations pursuant to the parties' agreement.

33. None of the Product has been returned to the Debtor.

## COUNT I

### Breach of Contract

34. The Debtor repeats and realleges paragraphs 1 through 33 of this action.

35. The Invoices constitute a valid and enforceable contract between the Debtor and Penguin (the "Contract").

36. The Contract is a valid, binding and enforceable contract between the Debtor and Penguin.

37. The Debtor has complied with the terms of the Contract.

38. Penguin breached the Contract by failing to pay the Receivable to the Debtor.

39. The Receivable is the account stated for the transactions between the Debtor and Penguin, as evidenced by the Invoices. Penguin has never disputed the accuracy of, or its liability for, the Receivable.

40. The Debtor has suffered damages in the amount of the Receivable as a result of Penguin's breach of the Contract.

WHEREFORE, the Debtor requests that the Court enter judgment in its favor and against Defendant Penguin Brands Inc. in the amount of one hundred fifty thousand dollars ($150,000.00) and such additional relief as this Court deems appropriate.

## COUNT II

### Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 105(a), 542(b)

41. The Debtor incorporates by reference the allegations set forth in paragraphs 1 through 33 above, as if fully restated herein.

42. The Receivable constitutes property of the estate.

43. Penguin is an entity that owes a debt that is property of the estate.

44. Penguin is currently in possession of the Receivable.

45. Penguin owes the Debtor the Receivable.

46. Penguin has refused to turn over the Receivable to the Debtor.

WHEREFORE, the Debtor requests that this Court enter judgment in its favor and against Defendant Penguin Brands Inc. on Count II as follows: (i) ordering Penguin to turn over one hundred fifty dollars ($150,000.00) to the Debtor pursuant to 11 U.S.C. §§ 105(a) and 542(b); and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT III

### Violation of the Automatic Stay

47. The Debtor incorporates by reference the allegations set forth in paragraphs 1 through 33 above, as if fully restated herein.

48. Section 362(a)(7) of the Bankruptcy Code provides that the commencement of a case under the Bankruptcy Code operates as a stay as to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362 (a)(7).

49. A creditor must obtain relief from the automatic stay or must obtain an order allowing setoff prior to exercising any right of setoff.

7

50. Penguin is knowingly violating the automatic stay provisions of 11 U.S.C. § 362 (the "Automatic Stay") by unilaterally exercising its right of setoff.

51. As of the date of this action, Penguin has not requested nor received relief from the Automatic Stay or otherwise obtained an order from this Court allowing such a setoff.

52. By issuing the Letter and improperly exercising a right to setoff, Penguin has exercised an alleged right of setoff in violation of the Automatic Stay.

53. Penguin has no valid right of setoff as against the Receivable.

WHEREFORE, the Debtor requests that this Court enter judgment in its favor and against Defendant Penguin Brands Inc. on Count III as follows: (i) ordering Penguin to turn over one hundred fifty dollars ($150,000.00) to the Debtor; (ii) ordering Penguin to pay Debtor all costs, attorney fees, and related expenses resulting from Penguin's actions, in violation the Automatic Stay, including but limited to those incurred in bringing this action; and (iii) granting such other and further relief as the Court deems just and equitable.

Dated: February 24, 2010

Respectfully submitted,

Bridgeview Aerosol, L.L.C.

By:    */s/ Steven B. Towbin*
       One of Its Attorneys

Steven B. Towbin (Illinois Bar No. 2848546)
Mark L. Radtke (Illinois Bar No. 6275738)
Kimberly Bacher (Illinois Bar No. 6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile